UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CYNTHIA M. BROWN,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>　　　　Defendant. | No. 2:18-cv-02284 KJN<br><br>ORDER and<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff seeks judicial review of the final decision by the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income under Titles II and XVI of the Social Security Act. In her summary judgment motion, plaintiff contends the Administrative Law Judge ("ALJ") erred by failing to: (A) articulate specific and legitimate reasons for discrediting her subjective symptoms and consider plaintiff's lack of insurance; (B) develop the record; (C) account for plaintiff's limitations; and (D) consider the side effects of plaintiff's medication. Defendant opposed and filed a cross-motion for summary judgment.

After considering the parties' written briefing, the record, and the applicable law, the court DENIES plaintiff's motion for summary judgment, GRANTS the Commissioner's cross-motion for summary judgment, and AFFIRMS the final decision of the Commissioner.

# I. BACKGROUND AND ALJ'S FIVE-STEP ANALYSIS[1]

Plaintiff stopped working in January 2014, and on May 22, 2015, she applied for disability insurance benefits and supplemental security income. (Administrative Transcript ("AT") 50-51, 205-15.) Plaintiff listed the following medical conditions in her application: rheumatoid arthritis, lupus, asthma, high blood pressure, and high cholesterol. (AT 239.) Plaintiff's application was denied initially and on reconsideration. (AT 94-95, 118-19.) Plaintiff sought review of these denials, without the aid of an attorney, before an ALJ. (AT 146-48.) At the April 25, 2017 hearing the ALJ questioned plaintiff, her husband, and a vocational expert. (AT 37-69.)

On August 24, 2017, the ALJ issued a decision determining that plaintiff was not disabled from her onset date to the date of the decision. (AT 19-36.) At step one the ALJ concluded that plaintiff had not engaged in substantial gainful activity since January 1, 2014, plaintiff's alleged onset date. (AT 24.) At step two the ALJ found that plaintiff had the following severe impairments: rheumatoid arthritis, mixed connective tissue disease, and asthma. (AT 24.) At step three the ALJ determined that these impairments did not meet or medically equal the severity of an impairment listed in Appendix 1. (AT 25) (citing 20 C.F.R. Part 404, Subpart P, Appendix

---

[1] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Disability is defined, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. § 423(d)(1)(a). A parallel five-step sequential evaluation governs eligibility for benefits. See 20 C.F.R. §§ 404.1520, 404.1571-76; Bowen v. Yuckert, 482 U.S. 137, 140-42 (1987). The following summarizes the sequential evaluation:

    **Step one**: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
    **Step two**: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
    **Step three**: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.
    **Step four**: Is the claimant capable of performing her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
    **Step five**: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995). The claimant bears the burden of proof in the first four steps of the sequential evaluation process. Bowen, 482 U.S. at 146 n.5. The Commissioner bears the burden if the sequential evaluation process proceeds to step five. Id.

1).)

After considering the record, the ALJ found that plaintiff could perform light work, but limited her to "frequent bilateral overhead reaching, handling and fingering." (AT 26.) The ALJ also found that plaintiff "could occasionally climb, crouch or crawl, but could never work around concentrated exposure to fumes, odors, dust, gases, smoke, poor ventilation or other environmental irritants." (AT 26.) In reviewing the record, the ALJ gave "little weight" to consultative examiner Dr. Sharma's opinion that plaintiff could perform medium exertion, as that finding did not properly account for plaintiff's rheumatoid arthritis and mixed connective tissue disease. (AT 29.) However, the ALJ gave "great weight" to Dr. Sharma's opinion that plaintiff could hold and finger objects limited to "frequently." (AT 29.) The ALJ similarly gave "great weight" to the reconsideration opinions, which found that plaintiff could carry 20 pounds occasionally and 10 pounds frequently, as well as frequently perform overhead reaching, handling, and fingering, as those opinions adequately considered plaintiff's severe impairments. (AT 29-30.)

Ultimately, the ALJ concluded at step four that plaintiff could perform her past relevant work as a receptionist. (AT 30.) This work, according to the ALJ, did not require plaintiff to perform work-related activities that were precluded by plaintiff's Residual Functional Capability ("RFC"). (AT 30.) The ALJ also made an alternative finding that there were jobs existing in significant numbers in the national economy that plaintiff could perform. (AT 30-31.)

On June 18, 2018, the Appeals Council denied plaintiff's request for review. (AT 1-6.) Plaintiff then filed this action within sixty days requesting judicial review of the Commissioner's final decision. The parties filed cross–motions for summary judgment. (ECF Nos. 1, 13, 14, 15.)

**II.     STANDARD OF REVIEW**

The court reviews the Commissioner's decision de novo, and should reverse "only if the ALJ's decision was not supported by substantial evidence in the record as a whole or if the ALJ applied the wrong legal standard." Buck v. Berryhill, 869 F. 3d 1040, 1048 (9th Cir. 2017). Substantial evidence is more than a mere scintilla, but less than a preponderance; i.e. "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

Edlund v. Massanari, 253 F. 3d 1152, 1156 (9th Cir. 2001). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Id. The court will uphold the ALJ's conclusion where "the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F. 3d 1035, 1038 (9th Cir. 2008). Further, the court may not reverse the ALJ's decision on account of harmless error. Buck, 869 F. 3d at 1048.

**III.   ISSUES PRESENTED**

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. Specifically, she argues that the ALJ failed to: (A) articulate specific and legitimate reasons for discrediting her subjective symptoms and consider plaintiff's lack of insurance; (B) develop the record; (C) account for plaintiff's limitations; and (D) consider the side effects of plaintiff's medication. (See generally ECF No. 13-1.)

The Commissioner responds that the ALJ articulated compelling, legally sufficient reasons for finding that plaintiff's subjective claims of disabling symptoms were not consistent with the record, the ALJ properly accounted for all of plaintiff's documented limitations in the RFC finding, and the record of the case is fully developed. (See generally ECF No. 14.) Thus, the Commissioner contends that the decision is supported by substantial evidence, which should result in the ALJ's opinion being affirmed. (Id.)

**IV   DISCUSSION**

A.   PLAINTIFF'S SUBJECTIVE SYMPTOMS and LACK OF INSURANCE

Due to the interrelatedness of plaintiff's first and third points the court addresses them together. Plaintiff's first point argues that the ALJ erred in weighing her subjective symptoms. (ECF No. 13-1 at 3.) Her third point alleges that the ALJ erred in considering her lack of treatment without possible excuses, i.e. lack of insurance, when weighing plaintiff's subjective complaints. (Id. at 7-8.) Even if the ALJ did err as plaintiff alleges, there still is substantial evidence in the record that supports the ALJ's finding, therefore the court finds no reversible error on either point.

In evaluating the extent to which an ALJ must credit the claimant's report of her symptoms, the Ninth Circuit has set forth the following two-step analysis:

4

> First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking. . . ." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002).

The ALJ in the present case initially found that plaintiff had a medically determinable impairment that could produce plaintiff's alleged symptoms (AT 27), but found in step two that the severity of plaintiff's symptoms was not supported by the evidence. (Id.) Additionally, the court notes that the ALJ did not entirely discount plaintiff's allegations related to her difficulty handling and fingering objects. Indeed, the ALJ limited plaintiff to frequently performing handling and fingering. (AT 29.) Nevertheless, to the extent that the ALJ discounted plaintiff's testimony regarding her symptoms and functional limitations, the ALJ provided sufficiently specific, clear, and convincing reasons for doing so.

First, the ALJ found that plaintiff's allegations were not consistent with the objective medical evidence, a valid rationale for discounting a plaintiff's subjective symptoms. See Tommasetti, 533 F.3d at 1039–40 (finding that the ALJ properly discredited claimant testimony due to inconsistencies with the objective medical evidence); accord Molina, 674 F.3d at 1113.

The ALJ exhaustively analyzed plaintiff's medical records and found them to be inconsistent with plaintiff's subjective symptoms. For example, the ALJ gave "great weight" to Dr. Sharma's opinion that plaintiff was limited in her ability to hold and finger objects, because

the opinion "sufficiently considers that claimant's reported difficulty with her hands and wrists." (AT 29, 350.) The ALJ also gave "great weight" to Dr. Garcia's opinion that plaintiff could lift 10 pounds frequently, lift 20 pounds occasionally, perform light work, and <u>frequently perform handling and fingering</u>. (AT 29, 104 (emphasis added).) Notably, these opinions take into account plaintiff's rheumatoid arthritis and her limitations of bilateral handling and fingering, the conditions she claims were not properly accounted for by the ALJ.

Additionally, the ALJ properly relied on evidence that plaintiff's condition was improved by conservative treatment and generally controlled through medication when discounting plaintiff's subjective symptoms. See Tommasetti, 533 F.3d at 1040; see also Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996); Bailey v. Colvin, 669 F. App'x 839, 840 (9th Cir. 2016).

Although diagnosed with rheumatoid arthritis, plaintiff's medical records generally were unremarkable, and plaintiff's symptoms were sufficiently controlled by medication. As noted by the ALJ, plaintiff's arthritis and mixed connective tissue disease "were improved within two months of beginning treatment" and remained stable with medication. (AT 28.) The ALJ's conclusion is confirmed by plaintiff's treating rheumatologist, Dr. Saharan, who reported that plaintiff's arthritis was mild to moderate in severity, was relieved by medication, was improving, and plaintiff did not experience flare-ups. (See AT 403, 405, 407, 411, 413, 415, 417, 419, 421.) Favorable responses to conservative treatment undermine plaintiff's assertions of the severity of her symptoms. See Tommasetti, 533 F.3d at 1040.

Accordingly, the ALJ relied on specific, clear, and convincing reasons for discounting the alleged severity of plaintiff's symptoms. Specifically, the ALJ properly relied on the objective medical evidence and evidence that plaintiff's symptoms were controlled through treatment and medication.

Nevertheless, plaintiff argues that the ALJ improperly relied on her conservative treatment without addressing her lack of health insurance. Additionally, plaintiff asserts that the ALJ improperly considered her daily activities when assessing her subjective symptoms. However, even if the court agreed with plaintiff, *arguendo*, any such error would be harmless.

////

"[A]lthough a conservative course of treatment can undermine allegations of debilitating pain, such fact is not a proper basis for rejecting the claimant's credibility where the claimant has a good reason for not seeking more aggressive treatment." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1162 (9th Cir. 2008) (quoting Orn v. Astrue, 495 F.3d 625, 638 (9th Cir.2007)).

Plaintiff asserts that the ALJ improperly considered her sporadic treatment when discounting her subjective symptoms without addressing her lack of insurance. See Orn, 495 F.3d at 638. As evidence of her lack of insurance, plaintiff points to treatment records from her first presentation to her rheumatologist, which state, "Initially patient did not have any insurance so she was not seen by any rheumatologist." (AT 338) (ECF No. 13-1 at 7.) It appears by the use of the term "initially" that plaintiff was insured at her initial January 2015 presentation, but was not insured prior to that date. However, this assertion is far from clear.

Regardless, the ALJ references "large gaps" of treatment only once, in a sentence referring to plaintiff's treatment records: "The claimant's treating records also do not support the claimant's severe allegations of disability, and describe conservative treatment with large gaps in treatment." (AT 27.) The ALJ then proceeds to state that plaintiff's treatment records were not reflective of a disabled individual, and analyze plaintiff's medical history in substantial detail. (AT 27-30.) There is no indication that the ALJ based his decision on plaintiff's lack of consistent treatment. Rather, it appears that the majority of the ALJ's rationale concerned plaintiff's medical records, which, as discussed above, provide sufficient evidence for his conclusion. Indeed, the "large gaps" the ALJ referenced appears to be referring to plaintiff's symptoms being controlled through conservative treatment, a valid rationale for discounting a claimant's subjective symptoms. See Tommasetti, 533 F.3d at 1040. "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954.

Plaintiff further argues that the basic daily activities she testified about—walking 15 minutes at a time, washing dishes, watching Netflix, and texting on her phone—are not proper bases for discounting her subjective symptoms. Common daily activities "may be grounds for an

adverse credibility finding 'if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.'" Orn, 495 F.3d at 639 (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir.2001)). The Ninth Circuit has reasoned that there are "two grounds for using daily activities to form the basis of an adverse credibility determination," when the activities contradict other testimony and when the activities are transferable to work settings. Id.

Here, the ALJ used plaintiff's activities as evidence of contradictory testimony. (See AT 27 ("[C]laimant has made inconsistently good reports of activities of daily living.").) The ALJ's reference is to plaintiff's claim that she cannot handle and finger objects for a significant period of time, which is contradicted, if only slightly, by her doing dishes, housework, and using a laptop. However, even if it was inappropriate for the ALJ to refer to plaintiff's daily activities as a basis for discounting her subjective symptoms, the court finds that such an error was harmless. See Molina, 674 F.3d at 1115 (finding harmless error when ALJ provides one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were supported by the record).

Accordingly, in light of the clear and convincing reasons the ALJ provided for discounting plaintiff's subjective symptoms, namely the objective medical evidence and plaintiff's symptoms being controlled through medication and treatment, there is substantial evidence supporting the ALJ's decision, making any alleged error harmless. See id. Plaintiff's first and third points are denied.

B.  DUTY TO DEVELOP THE RECORD

Plaintiff next argues that the ALJ did not adequately develop the record at the hearing on this matter, warranting reversal. This error, according to plaintiff, is even more egregious in light of her pro se status at her hearing before the ALJ.

"The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). "When the claimant is unrepresented . . . the ALJ must be

especially diligent in exploring for all the relevant facts." Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). However, an ALJ's duty to develop the record is triggered only when there is ambiguous evidence or the record is too limited for the evidence to be properly evaluated. See Mayes v. Massanari, 276 F.3d 453, 459–60 (9th Cir. 2001). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Armstrong v. Comm'r of Soc. Sec. Admin., 160 F.3d 587, 590 (9th Cir.1998). Conversely, as some courts have persuasively observed, the ALJ "does not have to exhaust every possible line of inquiry in an attempt to pursue every potential line of questioning. The standard is one of reasonable good judgment." Hawkins v. Chater, 113 F.3d 1162, 1168 (10th Cir.1997) (citation omitted).

Plaintiff does not contend that the ALJ should have subpoenaed records, submitted questions to physicians, or continued the hearing. Rather, plaintiff contends that the ALJ should have probed beyond some of plaintiff's single-word answers regarding her daily activities. (See ECF No. 13-1 at 6.) However, plaintiff does not show how these answers created ambiguity or resulted in a record that was too limited for the ALJ to evaluate the evidence. The ALJ properly relied on all of plaintiff's medical records, and plaintiff does not assert that there were medical records that were missing or not considered. (See Section A, above.)

The ALJ's duty to develop does not demand exhaustive questioning or follow-ups to every question. As mentioned, the standard to be applied is one of "reasonable good judgment." Hawkins, 113 F.3d at 1168. Here, the ALJ sufficiently and properly questioned plaintiff, her husband, and the vocational expert. (AT 37-69.) The record before the ALJ was properly developed and contains sufficient substantial evidence from which the ALJ based his findings. Accordingly, plaintiff's point is denied.

C.     THE ALJ PROPERLY ACCOUNTED FOR PLAINTIFF'S LIMITATIONS

Next, plaintiff contends that the RFC assessment failed to account for all of her limitations—specifically, plaintiff argues that the ALJ's limitation to "frequent bilateral handling and fingering" inadequately reflects her restrictions. (ECF No. 13-1 at 9.) This court is to affirm

the ALJ's determination of a claimant's RFC "if the ALJ applied the proper legal standard and his decision is supported by substantial evidence." Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005).

As discussed above, the ALJ discounted the alleged severity of plaintiff's subjective complaints, including her subjective symptoms relating to pain and her ability to effectively use her hands and fingers. As already mentioned, The ALJ relied on medical records that were inconsistent with plaintiff's subjective symptoms. To that end, when the ALJ created plaintiff's RFC, he relied heavily on Dr. Sharma's opinion that plaintiff was limited in her ability to hold and finger objects, because the opinion "sufficiently considers that claimant's reported difficultly with her hands and wrists, as well as the examiner's findings of tenderness and swelling in the fingers." (AT 29, 350.)[2] The ALJ also gave "great weight" to Dr. Garcia's opinion that plaintiff could lift 10 pounds frequently, lift 20 pounds occasionally, perform light work, and frequently perform handling and fingering. (AT 29, 104.)

As the ALJ noted, "These [medical] opinions sufficiently consider the claimant's severe impairments of rheumatoid arthritis, mixed connective tissue disease, and asthma, as well as the claimant's reported symptoms." (AT 30.) The ALJ's conclusion therefore properly accounts for plaintiff's limitations and is supported by substantial evidence in the record. Accordingly, plaintiff's point is denied.

D.  SIDE EFFECTS OF MEDICATION

Plaintiff's final point, which spans one paragraph and is without legal citation or citation to the record beyond the ALJ opinion, argues that the ALJ did not properly consider all the side effects of plaintiff's medication. In fact, the ALJ did account for these effects. (See AT 30.)

To the extent plaintiff argues that the ALJ should have accounted for the side effects of Prednisone, the ALJ properly noted that plaintiff's medical records do not support her allegations other than for a brief period, and her complained-of symptoms were resolved by adjusting her medication. (AT 29, 409, 413.) Nevertheless, in order to accommodate the side effects of

---

[2] The ALJ rejected Dr. Sharma's opinion that plaintiff could lift 25 pounds frequently and 50 pounds occasionally.

10

plaintiff's medication, the ALJ limited plaintiff to occasional postural activities. (AT 30.) Accordingly, the ALJ properly addressed plaintiff's reported symptoms. Plaintiff's final point is denied.

## V. CONCLUSION

The court finds that substantial evidence exists in the record to support the ALJ's conclusion that plaintiff is not disabled. Buck, 869 F. 3d at 1048. Thus, judgment should be issued in favor of the Commissioner.

Accordingly, IT IS HEREBY ORDERED that the Clerk of Court shall assign a district judge to this action.

IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (ECF No. 13) be DENIED;
2. The Commissioner's cross-motion for summary judgment (ECF No. 14) be GRANTED;
3. The final decision of the Commissioner be AFFIRMED, and judgment be entered for the Commissioner; and
4. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Turner v. Duncan, 158 F.3d 449, 455 (9th Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: February 11, 2020

/2284.brown

KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

1